# Moseley v. Gregory.

(Decided Nov. 1, 1932.)

BARNES & SMITH for appellant.

R. MILLER HOLLAND for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

On June 17, 1922, the appellant, C. J. Moseley, and
Tandy L. Harl, became sureties on the note of the ap-
pellee, J. E. Gregory, for $747.98. To secure or in-
demnify them, Gregory executed a mortgage on a crop
of tobacco and three race horses. The proceeds of the
tobacco, $131.03, was credited on the note. The balance
was satisfied in April, 1923, by the execution of another
note to the bank, signed only by Moseley and Harl. In
August, 1925, this note was paid in full by Moseley.
Several years thereafter he sued Gregory on the origi-
nal note to recover the sum of $638.49 and interest. In
defense, Gregory charged that he had delivered to

Moseley the three horses covered by the mortgage, which were worth $2,000, and that Moseley had appropriated them to his own use, and since that time he had owned and controlled them. A counterclaim for the difference in the value of the horses and the debt was asserted, but appears to have been abandoned. There was submitted to the jury only the issue as to whether Moseley had accepted the horses in settlement of the note sued on. The jury found that he had, and judgment was rendered dismissing the petition, from which the appeal is prosecuted.

It is argued that the evidence failed to show that there was any agreement or meeting of minds of the two parties upon the subject-matter, hence that the defense of payment was not sustained. Admitting that possession of the horses was acquired by him, the appellant claims that it was only to protect himself under the mortgage and for the purpose of putting the horses in shape for selling them and applying the proceeds to the satisfaction of the debt. It is true there was not shown any categorical offer and acceptance or any specific agreement to accept the horses in payment of the debt. But there were facts and circumstances proven from which such concurrence with the appellee's stated intention could be logically inferred. That evidence was, in substance, that Gregory had at the time no other property than these horses; that they were mortgaged to Moseley and Harl; that Moseley told Gregory it looked like he couldn't pay the debt and he had as well give up the horses; that in the spring of 1923 or 1924 (both years being stated), which was after the Gregory note was taken up and before payment of the new one signed only by Moseley and Harl, Gregory received information at his home that he should deliver the horses to Mason's stable at Owensboro. He did so. They were then taken by some one other than Gregory to Moseley's farm, and nothing was ever said to Gregory about the debt until the suit was filed in August, 1930. In the meantime, no effort was made to enforce the mortgage on the horses, nor was it made in this suit. After the delivery of the horses to Moseley, Gregory and Moseley were together frequently, and no reference was made to the debt, and Moseley seemed perfectly satisfied. It was shown that Moseley had stated he had taken the horses for the debt, and that he had the mares taken over in Indiana to be bred, and had paid for the

service. The stallion suffered a broken shoulder and was killed not long after being taken to Moseley's farm. The two mares and two of their colts are yet in Moseley's possession, and no offer has ever been made to return them, and no proposition submitted to Gregory to sell them and apply the proceeds on the debt. True it is that the appellee testified there was no agreement made by him with Moseley about taking the horses in settlement of the debt, but with the explanations which he made we think appellee meant that there was no specific agreement before he received word to deliver the horses that he should do so for that purpose. At any rate, this testimony, which weakened Gregory's claim, was for the jury to weigh along with all the other evidence.

The appellant's evidence was in substance that in March, 1924, Tandy Harl (since deceased) and Gregory together, of their own accord, brought the horses to Moseley's farm and he reluctantly agreed to keep, feed and attend to them for a reasonable compensation, and agreed that they should be sold and the debt and expenses paid. His subsequent actions in relation to the horses are explained and the imputed purposes denied. Without further notice, it may be said that the appellant's evidence tended to support his claim that he was simply trying to protect himself by becoming the agent of the appellee, and not otherwise.

It is not possible to be entirely sure of the true state of the case owing to the contradictions. It is possible that each man understood the situation in a different light and there was no such meeting of minds as to create a contract. It is for such cases as this that juries are chosen. They were the triers of fact and there assuredly was sufficient evidence to submit the question to them. On that simple issue nine of the twelve men accepted the appellee's version. We are not authorized to set aside that verdict, since it cannot be classed as flagrantly against the evidence, a term often defined and whose meaning is well understood.

We cannot sustain appellant's contention of error in instruction. The first instruction advised the jury to find for the plaintiff unless they should believe the conditions set out in the second one, which was as follows:

"If the jury believe from the evidence that the

plaintiff or the plaintiff and Tandy L. Harl· accepted the horses mentioned in the evidence in full settlement of the note sued on or that it was agreed or understood between the plaintiff and defendant that said horses were to be taken and accepted by the plaintiff in settlement of the note sued on and that plaintiff did take said horses and keep them and treat them as his own, then the law is for the defendant and the jury will so find.''

Appellant says this instruction permitted the jury to find against him if either he or Harl accepted the horses in payment of the debt, and that he was not responsible for what Harl might have done. We must interpret the instruction otherwise. There are two grounds of recovery, to wit: (1) If Moseley, alone, did so; or (2) if Moseley and Harl, jointly, did so. The second clause is conjunctive and not disjunctive. It was to the plaintiff's advantage rather than to his disadvantage. Nor do we think the jury could have misunderstood the phrase, ''that plaintiff did take said horses and keep them and treat them as his own.'' It is said that under this if the jury believed the plaintiff fed and cared for the horses in the same manner that he did his own stock, the verdict should go against him. When read with the context the argument is destroyed.

There was no material error in the evidence.

Judgment affirmed.